IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INOCENCIO FELIX, | ) | |
| | ) | |
| Plaintiff-Claimant, | ) | |
| | ) | No. 11 C 4314 |
| vs. | ) | |
| | ) | Jeffrey T. Gilbert |
| MICHAEL J. ASTRUE, Commissioner | ) | Magistrate Judge |
| of Social Security, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Claimant Inocencio Felix brings this action under 42 U.S.C.§ 405(g) seeking reversal or remand of the decision of Respondent Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying Claimant's application for disability insurance benefits. Claimant argues that Administrative Law Judge's ("ALJ") decision denying his application for disability benefits should be reversed or, alternatively, should be vacated and remanded to the Social Security Administration ("SSA") for further proceedings. In support of his motion for summary judgment, Claimant raises the following issues: (1) the ALJ failed to follow the treating physician rule; and (2) the ALJ did not properly evaluate Claimant's credibility. For the reasons discussed herein, Claimant's motion for summary judgment is granted [Dkt.#12]. The decision of the Commissioner of Social Security is reversed, and this matter is remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order.

## I. BACKGROUND

**A.     Procedural History**

Claimant filed his application for disability benefits on October 16, 2007, alleging a disability onset date beginning August 19, 2007.  R.19, 137-39.  The SSA initially denied the application on January 22, 2208 and upon reconsideration on April 1, 2008. R.19, 85-89, 90-94.  Thereafter, Claimant requested a hearing before an ALJ on April 30, 2008.  R.19, 95.  Claimant appeared with his attorney and testified at a hearing on August 13, 2009 before the ALJ.  R.31-82. Claimant's spouse Donna Felix also appeared and testified at the hearing (R.19, 67-76) as did Vocational Expert Frank Mendrick. R.76-82. No medical expert testified at the hearing.

On September 2, 2009, the ALJ issued his decision finding that Claimant is not disabled. R.19-30.  Specifically, the ALJ found that Claimant has severe impairments, including a seizure disorder; coronary artery disease, status post PTCA/stenting to the left anterior descending coronary artery; borderline to extremely low intellectual function; and depressive disorder with anxiety.[1] R.21. The ALJ concluded that Claimant's impairments cause significant limitation in his ability to perform basic work activities and that his mental impairment resulted in more than slight functional mental limitations. R.22. The ALJ, however, concluded that Claimant does not have an impairment or

---

[1] Percutaneous transluminal coronary angioplasty ("PTCA") is a procedure for opening damaged or blocked coronary arteries to restore arterial blood flow to the heart tissue without open-heart surgery.  *See* http://medical-dictionary.thefreedictionary.com/PTCA.

2

combination of impairments that meets or medically equals any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526). R.22.

The ALJ also determined that Claimant has "the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c), that is he can lift and/or carry 50 pounds occasionally and 25 pounds frequently; he can stand and/or walk for a total of about six hours in an eight-hour workday; he can sit for a total of about six hours in an eight-hour work day; except, he is to avoid working around dangerous moving machinery, at unprotected heights, on ladders or scaffolding, or in any other situation where having a seizure would be dangerous to the claimant or others; and, he is unable to maintain the attention and concentration necessary for detailed or complex tasks." R.24. The ALJ then concluded that Claimant is not capable of performing his past relevant work (R.28) but that, considering Claimant's age, education, work experience and residual functional capacity, Claimant is capable of making a successful adjustment to other work (R.29). Therefore, the ALJ determined that Claimant is not disabled. R.29.

Claimant filed a request with the Appeals Council for review of the ALJ's decision. R.15. On April 29, 2011, the Appeals Council denied Claimant's request for review of the ALJ's decision, making the ALJ's determination the final decision of the Commissioner. R.1-7. Claimant seeks review in this Court pursuant to 42 U.S.C.§ 405(g).

**B.      Hearing Testimony**

**1. Claimant Inocencio Felix**

At the time of the hearing, Claimant was 54 years old, married and living with this wife. He completed eighth grade in Puerto Rico. R.46. His past relevant was as a boat deck hand and repairman and as a control setup and operator for a transmission bearing company. R.47. Claimant testified that he stopped working in August 2007 after having a seizure and blackout. R.40.  Prior to this grand mal seizure, Claimant had one or two other grand mal seizures, but he testified that he had petit mal seizures more frequently. R.41-42.  After he stopped working, Claimant testified that he has had two grand mal seizures and at least 15 petit mal seizures. R.44. During petit mal seizures, Claimant testified that he goes "blind" and is unable to move for five to 15 seconds. *Id.* After a seizure, Claimant stated that he feels tired and experiences pressure in his neck.  *Id.* Claimant does not have any warning of an oncoming seizure. R.45.

In an average day, Claimant gets up at seven or eight o'clock in the morning and is awake for six to seven hours before taking a two-hour nap. R.47. During the day, he watches television and tries to do some household chores. R.48.  His wife does the laundry, cooks and performs the heavy household chores. R.58-59.  Claimant testified that he has difficulty remembering how to do things he used to do (R.55) and he also has difficulty concentrating (R.61).

**2. Claimant's Wife Donna Felix**

4

Claimant's wife also testified at the hearing. She testified that she helps her husband with activities around the house such as vacuuming and preparing meals. R.64. She described witnessing her husband's seizures, most recently characterized by staring off into space and not responding to stimuli. R.65. Mrs. Felix stated that Claimant has experienced seizures more often since he stopped working. R.66. She stated that the seizures vary in severity (R.68) and occur between one and three time a week (R.70). Mrs. Felix also reported that Claimant's comprehension is poor and that he has difficulty remembering things and focusing. R.71, 73.

### 3. Vocational Expert ("VE") Frank Mendrick

The VE testified that an individual of Claimant's age, education and work history, who could perform medium exertional work except that he was unable to work around dangerous moving machinery and at unprotected heights, on ladders, and on scaffolding, or in another situation in which having a seizure would be dangerous to himself or others and who was unable to maintain attention and concentration for detailed tasks, could not perform any of Claimant's past work. R.78. The VE, however, testified that Claimant could perform other work as an office cleaner, hand packer, and small products assembler. R.78-79. The VE also acknowledged that none of these occupations could be performed if an individual missed work more than once a month. R.80.


### C.    Medical Evidence

### 1. Hardeep Arora, M.D. — Treating Physician

5

Dr. Arora began treating Claimant in January 2007. R.251.  At that time, Claimant reported having a history of seizures since childhood but no seizures in the past two to three years. R. 251.  On March 15, 2007, Claimant reported having a seizure in the past week. R.319. Dr. Arora diagnosed Claimant with a seizure disorder and ordered laboratory testing for Claimant. R. 319.  On April 5, 2007, Dr. Arora prescribed an increased dosage of Dilantin, which is used to prevent and control seizures. R.250.  On June 18, 2007, Claimant reported an episode of blacking out with seizure activity. R.249. At a follow-up visit on August 24, 2007, Claimant reported that he had a seizure while driving and had hit a pole. R.252.  Dr. Arora advised Claimant to stop driving and referred him to a neurologist. R.252.

In a letter dated March 22, 2008, Dr. Arora reported that Claimant was under his care since January 2007 and was totally disabled and unable to preform any work for at least a year. R.335.  On April 5, 2008, Dr. Arora again reported that Claimant was disabled due to his seizure disorder and noted that his medications caused side effects of dizziness and headaches. R.337.

Dr. Arora also completed a Multiple Impairment Questionnaire dated June 8, 2009 and diagnosed Claimant with a seizure disorder, coronary artery disease and dyslipidemia. R.440-447.  Clinical and diagnostic evidence included findings on a catheterization with stenting and an echocardiogram. R.440-441.  Dr. Arora noted that Claimant's primary symptoms were seizures and that his last seizure occurred in April 2009. R.441. Dr. Arora

6

also noted occasional pain in his back and neck and pain in his knees on a daily basis. R.441-442.

Dr. Arora opined that Claimant's symptoms and limitations were present since January 2007. R.446. Dr. Arora further opined that Claimant was able to sit four hours total and stand/walk two hours total in an eight-hour work day. R.442. Claimant could occasionally lift and carry 10 pounds but never more. R.442. Dr. Arora reported that Claimant's pain, fatigue and other symptoms frequently interfered with this attention and concentration. R.445. Dr. Arora also stated that Claimant needed unscheduled breaks to rest every 30 to 45 minutes during an eight-hour day for 15-20 minutes at a time (R.445), and Dr. Arora estimated that Claimant would be absent from work two to three time a month on average. R.446.

### 2. Pradeep Bhatia, M.D. — Treating Physician

Dr. Bhatia is a neurologist, and he began treating Claimant in March 2007 upon referral from Dr. Arora. R.258. Claimant reported blacking out while driving with a resulting car accident on March 11, 2007 and postictal confusion. R.258. Claimant reported that he had major seizures every five years and minor seizures every two to three months that consisted of dizziness and impaired balance. R.258. Dr. Bhatia reported that Claimant appeared to have multiple different types of seizures, and he prescribed Keppra and Dilantin, which are indicated for the treatment of seizures. R.258.

At follow up visits on September 10, 2007 and January 14, February 15, and February 27, 2008, Claimant reported seizure activity at each visit. R.256, 326, 388.  Dr.

7

Bhatia recommended further testing. R.388. An MRI of the brain dated March 14, 2008 revealed partial agenesis of the corpus callosum and findings consistent with possible small vessel disease.[2] R.385. On April 7, 2008, Dr. Bhatia reported that Claimant's seizure activity recently had increased and was associated with left-sided numbness and postictal lethargy. R.333. Dr. Bhatia also noted that Claimant's medication caused side-effects of fatigue, dizziness, personality changes, and impaired balance. R.333.

Dr. Bhatia completed a Seizures Impairment Questionnaire dated June 3, 2008. R.342-347. He diagnosed Claimant with a seizure disorder with a congenital skull defect. R.342. Dr. Bhatia described Claimant's seizures as complex partial seizures and focal seizures, as well as possible pseudoseizures, which is seizure-like activity caused by psychological conditions. R.342. Dr. Bhatia opined that Claimant could not perform work that required an alert operator or operate a motor vehicle and that Claimant was incapable of more than low stress work because stress increased his seizures. R.344-345. Dr. Bhatia estimated that Claimant would be absent from work, two to three times a month on average due to is impairment or treatment. R.346.

In a report dated October 28, 2008, Dr. Bhatia stated he had been treating Claimant for seizures since March 2007. R.350. He opined that Claimant was not able to drive,

---

[2] Agenesis of the corpus callosum ("ACC") is a birth defect in which the structure that connects the two hemispheres of the brain is partially or completely absent. There is no standard course of treatment for ACC, but treatment usually involves management of symptoms and seizures if they occur. *See* http://www.ninds.nih.gov/disorders/agenesis/agenesis.htm.

operate heavy machinery, or climb ladders and that his prognosis was "bleak" in light of the long duration of his seizures. R. 350.

### 3. Kok Chua, M.D. — Treating Physician

Dr. Chua is a cardiologist, and he began treating Claimant in September 2008 for a follow-up of his coronary artery disease after he underwent his angioplasty in August 2008. R.496. Dr. Chua diagnosed coronary artery disease, hypertension, hyperlipidemia, myocardial infarction, and coronary angioplasty. R.497.

On June 8, 2009, Claimant complained of decreased energy level, occasional chest pain with activities, dizziness, lightheadedness, palpitations, and knee weakness. R.493. Dr. Chua diagnosed coronary artery disease and status-post myocardial infarction. R. 494. On July 10, 2009, Claimant reported chest discomfort, dizziness and weakness. R. 491.

Dr. Chua completed a Cardiac Impairment Questionnaire dated July 10, 2009. R.526-531. Dr. Chua diagnosed Claimant with coronary artery disease status post stenting. R.526. Clinical findings included chest pain. *Id.* Dr. Chua cited to EKG results and a coronary angiogram that supported the diagnosis. R.527. Her primary symptoms were chest pain, dizziness, and weakness. *Id.* Dr. Chua opined that Claimant was able to sit 2 hours total and stand/walk 2 hours total in a eight-hour workday. R.528. Dr. Chua estimated that Claimant would be absent from work, on the average, two to three time a month. R.529. Dr. Chua also reported that the symptoms and limitation described were present since August 2007. R.530.

### 4. Bryan Bernard — Examining Psychologist

Dr. Bernard evaluated Claimant at the request of Dr. Arora on August 12, 2008 to evaluate his mental and cognitive functioning. R.348.  On IQ testing, Claimant was found to have a verbal IQ of 69, a performance IQ of 79 and a full scale IQ of 72. He also was found to have significantly impaired recent memory. *Id.* A mental status examination revealed dysphoria, loss of interests, sleep disturbances, anxiety, and panic attacks. R.349. Dr. Bernard diagnosed depression and anxiety with resulting distractibility and stress contributing seizures. *Id.*

### 5.  State Agency Psychiatric Consultants

On January 14, 2008, Dr. Towfig Arjmand completed a Physical Residual Functional Capacity Assessment in which he concluded that Claimant could perform work within the limitations identified in the assessment.  R.283-290.  Those limitations did not include any exertional limitations in Claimant's ability to lift or carry, to sit, stand or walk or to push or pull, or any visual, manipulative or communicative limitation. R.284, 286, 287. Dr. Arjmand found that Claimant should never climb ladders, rope or scaffolding. R 285. He also concluded that Claimant should avoid a concentrated exposure to machinery and heights. R.287.

On March 24, 2008, Dr. Marion Panepinto completed an Illinois Request for Medical Advice from the SSA and affirmed the previous findings in the Physical Residual Functional Capacity Assessment dated. January 14, 2008. R.329-331. Dr. Panepinto found that the hazard restrictions and posture restriction identified in the Physical Residual Functional Capacity Assessment were appropriate. R.331.

10

**D.** **The ALJ's Decision**

On September 2, 2009, the ALJ issued his decision finding that Claimant has not

been under a disability, as defined by the Social Security Act, from August 19, 2007, the

alleged date of disability, through the date of his decision. R.19.  Specifically, the ALJ

concluded that despite the severe impairments of a seizure disorder, coronary artery

disease, borderline to extremely low intellectual functions, and depressive disorder with

anxiety, Claimant retained the residual functional capacity ("RFC") to perform medium

work except that he needed to avoid working around dangerous machinery, at unprotected

heights, on ladders and scaffolding, or in any other environment in which seizures are a

danger to him or others, and no work that required attention and concentration for

complex tasks. R.21-28.  Based on the RFC, the ALJ conceded that Claimant could not

perform his past work, but could perform work as an officer cleaner, hand packer and

inspector. R.28-29.

At step one, the ALJ found that Claimant had not engaged in substantial gainful

activity since August 19, 2007, the alleged onset date.  R.21. At step two, the ALJ found

that Claimant has severe impairments, including a seizure disorder; coronary artery

disease, status post PTCA/stenting to the left anterior descending coronary artery;

borderline to extremely low intellectual function; and depressive disorder with anxiety.

R.21.  The ALJ concluded that Claimant's impairments cause significant limitation in his

ability to perform basic work activities and that his mental impairment resulted in more

than slight functional mental limitations. R.22.

11

At step three, the ALJ, however, concluded that Claimant does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526). R.22. The ALJ then considered Claimant's RFC and concluded that Claimant has "the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) that is, he can lift and/or carry 50 pounds occasionally and 25 pounds frequently; he can stand and/or walk for a total of about six hours in an eight-hour workday; he can sit for a total of about six hours in an eight-hour work day; except, he is to avoid working around dangerous moving machinery, at unprotected heights, on ladders or scaffolding, or in any other situation where having a seizure would be dangerous to the claimant or others; and, he is unable to maintain the attention and concentration necessary for detailed or complex tasks." R.24. The ALJ concluded that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." R.27. The ALJ determined that "[a]lthough the claimant has received various forms of treatment for his symptoms, the record shows that the treatment has been essentially routine and/or conservative in nature and relatively effective in controlling these symptoms." R.27.

At step four, the ALJ concluded that, based on his RFC, Claimant could not perform his past relevant work. R.28. At step five, however, the ALJ ultimately

12

concluded that considering Claimant's age, education, work experience and RFC, Claimant is capable of making a successful adjustment to other work (R.29). Therefore, the ALJ determined that Claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.  R.29-30.

## II.  LEGAL STANDARD

### A.     Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review.  *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).  Under such circumstances, the district court reviews the decision of the ALJ.  *Id.*  Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision.  *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough.  *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).  Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion."  *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).  If the Commissioner's decision lacks evidentiary support or adequate

13

discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**B.       Disability Standard**

Disability insurance benefits are available to a claimant who can establish she is under a "disability" as defined in the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if she is unable to do her previous work and cannot, considering her age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

14

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20 CFR. § 404.1520(a)(4)(i-v). Under this process, the ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing other work. *Id.* Once the claimant has proven she cannot continue her past relevant work due to physical limitations, the ALJ carries the burden to show that other jobs exist in the economy that the claimant can perform. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

## III. DISCUSSION

Claimant raises the following issues in support of his motion for summary judgment: (1) the ALJ failed to follow the treating physician rule; and (2) the ALJ did not properly evaluate Claimant's credibility.

**A. The ALJ's Decision To Not Give Controlling Weight To The Opinions Of Claimant's Treating Physicians Is Not Sufficiently Explained**

An ALJ makes a RFC determination by weighing all the relevant evidence of record. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. In doing so, the ALJ must determine what weight to give any opinions of the claimant's treating physicians. 20 C.F.R. § 404.1527. Claimant argues here that the ALJ improperly credited the opinions of the non-treating physicians over the opinions of his own treating physicians without sufficient explanation of his reasons for doing so. The Court agrees.

15

The opinion of a treating physician is given controlling weight if it is well supported by medically acceptable clinical or laboratory diagnostic testing and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); Social Security Ruling ("SSR") 96-2p; *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). A contradictory opinion of a non-examining physician is not, by itself, sufficient for the ALJ to reject a treating physician's opinion. *Gudgel,* 345 F.3d at 470. Once well-supported contradictory evidence is introduced, however, the treating physician's opinion is no longer controlling but remains a piece of evidence for the ALJ to weigh. *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). When an ALJ fails to credit a treating physician's opinion, he must at least minimally discuss the reasons that lead him to that result. *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2001).

A central issue in this case is that the ALJ rejected and discounted the opinions of Claimant's treating physicians — Dr. Arora, Dr. Bhatia, and Dr. Chua. The medical records in this case reveal that Dr. Arora, Claimant's primary care physician, opined that Claimant was unable to sustain sedentary activities. R.27. Dr. Arora based his opinion on clinical and diagnostic evidence of a catheterization with stenting and an echocardiogram, a history of seizures, occasional pain and fatigue. R. 440-442. Dr. Bhatia, Claimant's neurologist, determined that Claimant had a life-long restriction of no driving, no operating heavy machinery and no climbing ladders. R.27. He opined that Claimant was precluded from full-time work in part because he would be absent on

16

average two time a month due to his impairments. R.346.  Dr. Bhatia based his opinions

on Claimant's history of seizures and the diagnosis of a skull deformity. R.27, 342-343.

Finally, Dr. Chua, Claimant's cardiologist, also found that Claimant was not capable of

performing sedentary work.  R.27, 528.  Dr. Chua cited medical findings of the EKG

results, a coronary angiogram, chest pain, dizziness and weakness.  R.527.

In reaching his decision in this case, the ALJ determined that "the opinions of the

treating sources are inconsistent with the other evidence of record and, therefore, are not

entitled to controlling weight." R.27.  Specifically, the ALJ concluded that the treating

physicians' reports and progress notes "fail to reveal the type of significant clinical and

laboratory abnormalities one would expect if the claimant were, in fact, disabled and the

doctors did not specifically address this weakness." R.28.  The ALJ also determined that

"[a]lthough the claimant has received various forms of treatment for his symptoms, the

record shows that the treatment has been essentially routine and/or conservative in nature

and relatively effective in controlling these symptoms." R.27.  The ALJ instead found that

the opinions of the State agency physicians deserved "some weight, particularly in a case

like this in which there exists a number of other reasons to reach similar conclusions."

R.28.

The ALJ does not point to any specific medical evidence to support his conclusion.

Rather, he relies on his own opinion as to what Claimant's medical records reveal and

what type of treatment Claimant has received.  Courts have held that "an ALJ must not

substitute his own judgment for a physician's opinion without relying on other medical

17

evidence or authority in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

In addition, Social Security Ruling 96-2p states that an ALJ's "decision must contain

specific reasons for the weight given to the treating source's medical opinion, supported

by the evidence in the case record, and must be sufficiently specific to make clear to any

subsequent reviewers the weight the adjudicator gave to the treating sources's medical

opinion and the reasons for that weight." SSR 96-2p.

While the ALJ criticized the treating physicians' opinions as "inconsistent with

the other evidence of record," the ALJ does not cite specific medical evidence in the

record other than his vague notions that Claimant's treating physicians relied on

Claimant's subjective complaints rather than on any objective or clinical findings in the

record, and that the course of treatment prescribed by Claimant's treating physicians was

not "consistent with what one would expect if the claimant were truly disabled." R.28.

The Seventh Circuit has held that an ALJ cannot brush aside doctors' opinions based

solely on a belief that the doctors based their opinions on a claimant's subjective

complaints. *Parker v Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).

For example, the ALJ stated that Claimant has not been diagnosed as having petit

mal seizures (R.27), but there is no dispute that Claimant has been diagnosed with having

a seizure disorder. The ALJ even identified Claimant's seizure disorder as a severe

impairment at step two of his analysis. R.21. The ALJ seems to discount the treating

physicians' opinions that Claimant has a seizure disorder because those opinions unduly

credit Claimant's subjective reports that he experiences seizures. R.27-28. This

18

rationale, however, is not persuasive. Unless a patient has a seizure in the doctor's office, the only evidence of the seizure is the testimony of the person who had the seizure or a witness to it. Aside from Dr. Bhatia's statement that he does not know if Claimant is a malingerer, none of the treating physicians questions in any way whether Claimant has seizure disorder. Rather, it is clear from the medical evidence that Claimant has been prescribed medicine to control his seizures (R.251, 258, 344, 350, 352, 440), and there is testimony from Claimant and his wife that he has seizures. R.65-70. There also is some evidence in the record that Claimant's daughter reported that Claimant experiences seizures. R.26, 265.

   With due deference given to the ALJ's decision, the logical bridge between the record evidence and the ALJ's conclusion to reject the opinions of Claimant's treating physicians is missing. Although the ALJ decided that the treating physicians' opinions were not entitled to controlling weight, they remained a piece of evidence for the ALJ to weigh. *See Hofslien*, 439 F.3d at 377. It is not clear to this Court, however, how the ALJ weighed the opinion testimony offered in this case from (a) Claimant's treating physicians, who opined that Claimant was, in fact, disabled, and (b) the non-treating State agency physicians, who opined that Claimant was not disabled, particularly in light of the Seventh Circuit admonishment that a contradictory opinion of a non-examining physician is not, by itself, sufficient for the ALJ to reject a treating physician's opinion. *Gudgel,* 345 F.3d at 470. Instead, the ALJ offered only conclusory statements that the opinions of Claimant's treating physicians were not entitled to controlling weight while the opinions

of the non-treating State agency physicians, which supported a finding of "not disabled,"
were entitled to some weight without discussion of specific record evidence to support
those conclusions.

Without further explanation, we cannot determine whether the ALJ's conclusions
are supported by substantial evidence. As the Seventh Circuit emphasized in *Clifford*, an
ALJ must minimally articulate his analysis of the evidence so that the reviewing court can
following his reasoning. 227 F.3d at 870. Unfortunately, the ALJ did not do that here.
Therefore, we must conclude the ALJ impermissibly substituted his judgment for that of
Claimant's treating physicians and remand this matter for further evaluation and
explanation.

**B.      On Remand, the ALJ Should Revisit the Issue of Claimant's Credibility**

An ALJ is in the best position to determine the credibility of witnesses, and this
Court reviews that determination deferentially. *Craft v. Astrue*, 539 F.3d 668, 678 (7th
Cir. 2008) (citing *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006)). The ALJ has the
discretion to discount testimony on the basis of evidence in the record. *Johnson v.
Barnhart*, 449 F.3d 431, 435-36 (7th Cir. 2000). However, the basis for the ALJ's
credibility determination must be articulated and "sufficiently specific" to make clear to a
claimant and subsequent reviewers the weight given to a claimant's statements and the
reasons for the weight given. SSR 96-7p. The ALJ must consider the entire case record
in determining credibility, and statements about the intensity or persistence of symptoms

or about the effect of symptoms on functioning may not be rejected simply because they are not substantiated by objective medical evidence. *Id.*

Here, the ALJ appears to have discounted Claimant's testimony, as well as his wife's testimony, about the persistence and intensity of his seizures and his frequent inability to function as a result of the seizures. The ALJ did not address any of Claimant's testimony about his difficulty performing some daily activities in conjunction with his analysis of the medical evidence. Taken at face value, Claimant's testimony as well as the testimony of his wife is contrary to the ALJ's conclusion that Claimant has the ability to perform medium work. The ALJ failed to address that evidence and explain why he does not believe Claimant's or his wife's testimony.

The ALJ held that the "claimant's statements are not credible to the extent they are inconsistent with" the ALJ's RFC assessment. R.27. Such language, however, has been deemed "meaningless boilerplate" and criticized for providing "no clue" as to the weight the ALJ gave a claimant's testimony. *Martinez et. al. v. Astrue*, 630 F.3d 693 (7th Cir. 2011) (rejecting boilerplate credibility determinations); *Parker et. al. v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("It is not only boilerplate; it is meaningless boilerplate. The statement by a trier of fact that a witness' testimony is "not entirely credible" yields no clue to what weight the trier of fact gave the testimony."); *Mendez v. Barnhart*, 439 F.3d 360, 363 (7th Cir. 2006) (indicating that a partially credible determination that the person is credible, but not to the extent alleged, is an odd finding and unclear in meaning). An

21

ALJ is required to provide specific reasons for rejecting Claimant's testimony. SSR 96-7p.

It is not clear from the ALJ's opinion that he ever specifically addressed and analyzed the factors listed in SSR 96-7p. Clearly, one of the reasons given by the ALJ for his decision to reject Claimant's testimony appears to be that Claimant had not sought sufficient treatment. R.27. The ALJ specifically stated: "Although the claimant has received various forms of treatment for his symptoms, the record shows that the treatment has been essentially routine and/or conservative in nature and relatively effective in controlling these symptoms." R.27. An ALJ, however, is not permitted to reject Claimant's allegations based on some vague belief that his course of treatment does not support a finding of disability. SSR 96-7p expressly provides that an ALJ "must not draw inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanation that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatments." SSR 96-7p.

In this case, the longitudinal record shows that Claimant has received medical treatment since at least 2007 for his seizure disorder and coronary heart disease, and currently is being prescribed medicine to help control his seizures. He also is seen by his doctors consistently. Although the ALJ explicitly drew an adverse inference about Claimant's course of treatment, there is no evidence that the Claimant actually required additional treatment or should have sought additional medical care. It is unclear what

22

additional treatment the ALJ thought was lacking here.  The record is undeveloped in this area, and the ALJ failed to build the requisite logical bridge for his decision to reject Clamant's course of treatment.

Thus, for all of these reasons, it is necessary to remand the case to allow the ALJ further opportunity to explain the basis for his adverse credibility determination and, possibly, to further develop the record.

## IV.  CONCLUSION

For the reasons set forth in the Court's Memorandum Opinion and Order, Claimant Inocencio Felix's motion for summary judgment is granted [Dkt.#12]. The decision of the Commissioner of Social Security is reversed, and this matter is remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated:   December 10, 2012